Argued and submitted June 16, reversed and remanded August 25, respondents'
petition for reconsideration filed September 8 allowed by opinion
November 10, 2004
See 196 Or App 153 (2004)

In the Matter of the Compensation of
Larry E. Hicks, Claimant.

Larry E. HICKS,
*Petitioner,*

*v.*

SAIF CORPORATION
and Prairie Wood Products,
*Respondents.*

02-06643; A122095

96 P3d 856

R. Adian Martin filed the brief for petitioner.

Jerome P. Larkin filed the brief for respondents.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Claimant seeks review of an order of the Workers' Compensation Board rejecting a medical arbiter's rating of his impairment and substituting an impairment rating resulting in a reduction in claimant's disability award from 36 percent unscheduled permanent partial disability to 18 percent permanent partial disability. We conclude that the board erred in rejecting the medical arbiter's rating of claimant's impairment and reverse.

The facts are undisputed. Claimant injured his neck at work in September 2000, when he fell from a ladder. Diagnostic testing revealed that claimant suffered from a disc herniation at C4-5 and preexisting degenerative changes at C5-6 and C6-7. SAIF accepted a claim for disc herniation at C4-5. It did not accept the degenerative changes at C5-6 and C6-7. Claimant had surgery for a cervical diskectomy at C4-5, C5-6, and C6-7, with an interbody fusion at C4 though C7. Dr. Newby, claimant's attending surgeon, opined on January 30, 2002, that claimant would suffer no permanent impairment as a result of the C4-5 disc herniation or the surgery. He expressed the same opinion again in March 2002, when he conducted a closing examination, measured claimant's ranges of motion and determined that claimant was medically stationary. SAIF closed the claim on April 4, 2002, with an award of 18 percent unscheduled permanent partial disability, based on 8 percent impairment for the surgery at the accepted C4-5 level and 10 percent for social/vocational factors.

Claimant sought reconsideration, and Dr. Grunwald, a medical arbiter, examined claimant. He noted that claimant suffered from pain in his neck and reduced range of motion. Grunwald was asked to "provide based on your medical judgment, the percentage of findings or the specific findings that are due to the accepted condition." He answered:

> "I believe the patient's complaint of cervical pain is based 100% on his accepted injury or disc herniation of C4-5."

Grunwald also reported that claimant suffers "significant decrease in [ranges of motion] of the cervical column secondary to fusion surgery directly related to the disc herniation

and injury at C4-5." In response to a request for clarification from the Appellate Review Unit of the Department of Consumer and Business Services (ARU), Grunwald checked a box indicating that 100 percent of claimant's range of motion loss is due to the accepted disc herniation at C4-5.

The ARU found that the medical arbiter's report "provided an accurate history, is expressed in clear and concise reasoning, and is based on sound medical principles and objective findings." Considering the impairment due to loss of range of motion and the value assigned by administrative rules to the surgery, the ARU increased claimant's award from 18 to 36 percent unscheduled permanent partial disability.

SAIF requested a hearing, contending that, in light of the fact that claimant's surgery also repaired noncompensable preexisting conditions, the medical arbiter's unexplained "check-the-box" response attributing 100 percent of claimant's pain-related range of motion impairment to the compensable injury is not persuasive. Rather, SAIF contended, claimant's level of impairment should be determined based on Newby's reports indicating that claimant has suffered no permanent impairment due to the accepted disc herniation.

■    The administrative law judge (ALJ) concluded that "a preponderance of the medical evidence in the record establishes a different level of impairment than that found by the medical arbiter." In affirming the ALJ, the board stated that it had no reason "to question the arbiter's initial statement that claimant has lost cervical range of motion 'secondary' to his cervical fusion surgery." Further, the board stated expressly that it did not rely on Newby's report because Newby's report did not accurately reflect claimant's condition as of the time of the reconsideration proceeding, "particularly because claimant's condition worsened after Dr. Newby's examination."[1] The board nonetheless said that, in light of

---

[1] ORS 656.295(5) provides, in part:

"The review by the board shall be based upon the record submitted to it under subsection (3) of this section and such oral or written argument as it may receive. Evaluation of the worker's disability by the board shall be as of the date of issuance of the reconsideration order pursuant to ORS 656.268."

the fact that claimant's noncompensable preexisting conditions had contributed to the need for the fusion surgery, it found "unpersuasive" the arbiter's conclusion that 100 percent of claimant's surgery-related loss of range of motion was due to the compensable C4-5 condition. The board accordingly modified claimant's award to eliminate an impairment rating for reduced cervical range of motion. One member of the board dissented, reasoning that, in the absence of other medical evidence rating claimant's impairment, the board was required to accept the impairment finding of the medical arbiter. Claimant seeks review, asserting that the board erred in rejecting the medical arbiter's opinion.

When a worker challenges the impairment ratings in a notice of closure, a medical arbiter is appointed, ORS 656.268(7)(a), and the arbiter's findings are submitted to the director on reconsideration of the notice of closure. The worker's impairment is established by the medical arbiter, unless a preponderance of the evidence establishes a different level of impairment. OAR 436-035-0007(14) (1999).

■  As we said in *Khrul v. Foremans Cleaners*, 194 Or App 125, 93 P3d 820 (2004), in reviewing the director's order on reconsideration, the board is not free to determine a claimant's impairment. It, too, must accept the opinion of the medical arbiter, unless other medical opinion establishes a different level of impairment. *Khrul*, 194 Or App at 130. "Other medical opinion" may come from findings of the attending physician or physicians with whom the attending physician concurs. *See* ORS 656.245(2)(b)(B) ("Except as otherwise provided in this chapter, only the attending physician at the time of closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability."); *Koitzsch v. Liberty Northwest Ins. Corp.*, 125 Or App 666, 866 P2d 514 (1994).

In this case, because the board expressly did not rely on the attending physician's impairment findings, there remained only one medical opinion on which the board could rely in determining claimant's level of impairment—that of the medical arbiter.

In *Khrul*, we said that, even when the medical arbiter's opinion is the only opinion as to impairment, the board

must nonetheless be satisfied that the report rates impairment caused by the compensable condition. *Khrul*, 194 Or App at 130-31. That means that the board may reject an opinion that rates impairment other than impairment caused by the compensable condition. For example, in *Khrul*, we held that the board reasonably interpreted the medical arbiter's report to have rated impairment that the arbiter believed was not permanent or related to the compensable condition. *Id.* at 132. That does not mean, however, that the board is free to disregard the medical arbiter's opinion as to causation of impairment merely because it finds the opinion unpersuasive.

In this case, the medical arbiter's report unambiguously attributed 100 percent of claimant's reduced cervical range of motion to the accepted injury. In the absence of other evidence showing a different level of impairment or that the impairment was not related to the injury, the board was not free to disregard the medical arbiter's opinion as not persuasive. The board accordingly erred in rejecting the medical arbiter's rating of claimant's impairment.

Reversed and remanded.